# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**NOVO NORDISK, INC.,**

       **Plaintiff,**

**v.**

**Case No.: 5:23-cv-00689-ACC-PRL**

**WELLS PHARMACY
NETWORK, LLC,**

       **Defendant.**

_____

# ORDER

This cause comes before the Court on Defendant Wells Pharmacy Network LLC's Motion for Summary Judgment (Doc. 31). Plaintiff Novo Nordisk, Inc. has filed a Response (Doc. 36), and Wells Pharmacy has filed a Reply (Doc. 40); thus, the matter is ripe for review. For the reasons stated herein, the motion is granted.

## I.      BACKGROUND

### A. Factual Background

On November 29, 2023, Novo Nordisk filed suit against Wells Pharmacy to enjoin Wells Pharmacy's "unlawful business practice" of compounding, marketing, and selling adulterated, misbranded, and non-FDA approved semaglutide drugs containing the body-protecting compound 157 ("BPC-157") in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* and the Florida Drug and Cosmetic Act ("Florida DCA"), Fla Stat. § 499.001 *et seq.* Novo Nordisk seeks a declaration that Wells Pharmacy's business practices violate

the Lanham Act, 15 U.S.C.§ 1125(a)(1)(B) (Count I), constitute common law unfair competition (Count II), and violate the FDUTPA (Count III), and further, seeks an injunction prohibiting Wells Pharmacy from committing such violations.[1] (Doc. 1 at 30).

In its motion, Wells Pharmacy argues there is no dispute that it ceased compounding and advertising the only drug mentioned in the Complaint, rendering Novo Nordisk's claims moot, and thus, summary judgment must be granted in its favor. Wells Pharmacy argues that Novo Nordisk cannot meet its burden to prove Article III standing or the existence of an irreparable harm, which is required to obtain injunctive relief. In response, Novo Nordisk argues the plain language of the Complaint demonstrates that it has alleged a broader category of Wells Pharmacy's "semaglutide" drugs are adulterated and falsely advertised.

### 1. Compounding and Bulk Substances

By way of background, the Court summarizes the following proposed facts (Doc. 31-1), recognizing that Novo Nordisk objects to them on the grounds they state legal conclusions. The Federal Food, Drug, Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301 *et seq*., instructs the FDA to ensure the safety and efficacy of prescription drugs. Congress does not subject compounded drugs to the approval

---

[1] Novo Nordisk also seeks attorney's fees and court costs but does not seek monetary damages for past violations of FDUTPA or the Lanham Act. (Doc. 1 ¶ 47).

process used for new drugs because valid compounding has traditionally been seen as an appropriate means of customizing existing drugs to the needs of individual patients. *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040 (9th Cir. 2022); *Athenex Inc. v. Azar*, 397 F. Supp. 3d 56, 59 (D.D.C. 2019), appeal dismissed sub nom. State-licensed 503A compounding pharmacies can compound drug products using bulk drug substances that either comply with U.S. Pharmacopeia or National Formulary regulations or appear on what is commonly referred to as the FDA's 503A Bulks List. FDA Guidance on Bulk Drug Substances Used in Compounding Under Section 503A of the FD&C Act, December 12, 2023, https://www.fda.gov/drugs/human-drug-compounding/bulk-drug-substances-used-compounding-under-section-503a-fdc-act.

In January 2017, the FDA issued a policy which created a safe harbor for compounding pharmacies to compound with bulk substances not included on the 503A Bulks List in certain situations in which the bulk substance has been nominated for inclusion but not yet approved or denied. *See* FDA's Interim Policy on Compounding Using Bulk Drug Substances Under Section 503A of the Federal Food, Drug, and Cosmetic Act Guidance for Industry, January 2017, at 3-4, available at https://www.fda.gov/media/94398/download. The Interim Policy categorizes the bulk substance nominations into Categories 1 through 3 based on the sufficiency of information supporting the nomination and the overall safety of the substance as determined by the nominee, their clinical studies and testing, and the FDA. *Id.*

Category 2 substances—like those at issue here—lack sufficient information to fully evaluate the safety of the bulk substance, and the FDA may take enforcement action against a compounding pharmacy compounding with a bulk substance identified on the Category 2 list. *FDA Guidance on Bulk Drug Substances Used in Compounding Under Section 503A of the FD&C Act*.

### 2. **Undisputed Facts**

Unless otherwise noted, the following facts are not in dispute.[2] Semaglutide is the foundational molecule which serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the FDA: Wegovy®, Ozempic®, and Rybelsus®. Declaration of Morten Hach, Scientific Director at Novo Nordisk A/S, a parent entity of Novo. (Doc. 36-3 at ¶ 5). Novo Nordisk is the only company in the U.S. with FDA-approved products containing semaglutide. FDA has not approved any generic versions of semaglutide. (*Id*. ¶ 7).

An active pharmaceutical ingredient ("API") is a chemical-based compound that is the main ingredient of a medicine that produces a biological effect in the body. During compounding, APIs are combined with other ingredients in order to create the medication that is dispensed to patients. Semaglutide is an API. (*Id*. ¶ 10).

---

[2] The Court garners these facts from Wells Pharmacy's Statement of Undisputed Facts (Doc. 31-1), Novo Nordisk's Response thereto (Doc. 36-1), and Novo Nordisk Inc.'s Statement of Additional Undisputed Material Facts (Doc. 36-2).

Beginning in 2022, Wells Pharmacy began compounding and dispensing a sterile semaglutide + BPC-157 preparation at its Ocala, Florida facility to address side effects caused by semaglutide. *See* Declaration of Kristopher Fishman, President of Wells Pharmacy Network, LLC. (Doc. 31-2); *see also* Advertisement, attached as Exhibit A to Complaint (Doc.1-1). Wells Pharmacy's Ocala, Florida facility is a registered 503A compounding pharmacy. (Doc. 31-2 at ¶¶ 3-4). Prior to this, Wells Pharmacy submitted an application to the FDA to nominate BPC-157 to the FDA Bulks List in November 2020. (*Id*. at ¶ 5-6).

Some presentations of semaglutide injections, including Wegovy® and Ozempic®, have been on the FDA's drug shortage list since approximately March 31, 2022. (Doc. 36-3 at ¶ 8). However, the specific presentations of semaglutide injection in shortage have changed over time. *Id*. For example, non-injectable semaglutide (Rybelsus®) has never been listed on the FDA's drug shortage list. (*Id*. ¶ 10).

In conjunction with its compounding of semaglutide + BPC-157, Wells Pharmacy marketed its product as having the possibility of promoting healing and faster cell regeneration. *See* Advertisement, attached as Exhibit A to Complaint (Doc. 1-1). The allegedly improper advertisement includes:



(Doc. 1 at 12). According to Novo Nordisk, the statement in this advertisement that

Wells Pharmacy's compounded product as "[a]pproved in 2021 by FDA for chronic

weight management in obese/overweight adults" refers to Novo Nordisk's

semaglutide medicines rather than Wells Pharmacy's unapproved compounded

drug, thus misleading the consumer. (Doc. 1 at ¶ 21). Novo Nordisk explains that

the ad quotes Dr. Timothy Garvey discussing the clinical trials of Novo Nordisk's

semaglutide medicines, rather than Wells Pharmacy's compounded drug. (Doc. 36-

5 at ¶¶ 26, 30). It states:

> "We have not seen this degree of weight loss with any previous medication," said Dr. Timothy Garvey of the University of Alabama at Birmingham. According to data from trial results, more than 50 percent of trial participants lost 15 percent of their body weight, and anywhere between a third and 40 percent of participants lost 20 percent of their body weight.

(Doc. 1 at ¶ 22). At the time Wells Pharmacy was compounding its sterile semaglutide + BPC-157 preparation, BPC-157 was nominated for inclusion on the 503A Bulks List and had not been deemed unsuitable for the FDA's review. (Doc. 31-2 at ¶¶ 5-6). On September 29, 2023, the FDA issued a new guidance document which recategorized several 503A Bulk List nominees, including BPC-157. *See* Category 2 of the Bulk Substances Nominated Under Sections 503A or 503B of the Federal Food, Drug, and Cosmetic Act, Dec. 12, 2023, https://www.fda.gov/drugs/human-drug-compounding/safety-risks-associated-certain-bulk-drug-substances-nominated-use-compounding. The FDA has stated that "[c]ompounded drugs containing BPC-157 may pose risk for immunogenicity for certain routes of administration and may have complexities with regard to peptide-related impurities and API characterization." (Doc. 36-3 at ¶ 26). Citing its inability to locate any safety-related information pertaining to potential interactions with other peptides and active pharmaceutical ingredients, the FDA added BPC-157 to the Category 2 nomination list. *See id*.

According to Wells Pharmacy, following the FDA's action, Wells Pharmacy immediately ceased all purchases of bulk BPC-157. (Doc. 31-2 at ¶¶ 7-8) (noting that last purchase of BPC-157 was made on September 22, 2023). Wells Pharmacy sold its then-existing inventory of BPC-157 products—the last of which it agreed to fill the day before Novo Nordisk filed its lawsuit and ceased compounding with BPC-157. (*Id*. at ¶ 9) (noting that the last dispensed product was requested on

November 28, 2023); (Doc. 32-1); (Doc. 34-1). According to Wells Pharmacy, Novo Nordisk's claims are directly tied to the change in the FDA's position regarding BPC-157. (Doc. 1 ¶ 42, n.28).

Wells Pharmacy has presented evidence that the advertisement was withdrawn and replaced on May 2, 2023—more than six months before Novo Nordisk filed suit. (Doc. 31-2 at ¶¶ 7-8). Wells Pharmacy also represents it has ceased all advertising of its sterile semaglutide + BPC-157 preparations because it no longer compounds with BPC-157. (*Id*. at ¶ 11). Wells Pharmacy never received a complaint or a notice of an adverse event in connection with its sterile semaglutide + BPC-157 preparations. (*Id*. at ¶ 13). Wells Pharmacy did not stop compounding BPC-157 in response to Novo Nordisk Inc.'s lawsuit. (*Id*. at ¶ 14). Wells Pharmacy will not resume compounding with BPC-157 unless the FDA changes its position on the safety and efficacy of BPC-157 and adds it to the FDA Bulks List or the Category 1 Nomination List. (*Id.* at ¶ 15).

Testing on Novo Nordisk's behalf was conducted on multiple samples of compounded semaglutide obtained from Wells Pharmacy. (Doc. 36-3 ¶ 15). These tests compared Wells Pharmacy's compounded semaglutide drugs[3] to Novo

---

[3] The parties disagree as to the scope of Novo Nordisk's claims. According to Novo Nordisk, its Complaint "makes plain that its adulteration claim is based in part on the inclusion of BPC-157, but separately based on the impurities found in the testing of Wells Pharmacy's "semaglutide" drugs. (Doc. 36 at 12, citing Doc. 1 at ¶¶ 13, 14, 17). Wells Pharmacy disagrees and argues Novo Nordisk attempts to defeat summary judgment by raising new claims. (Doc. 40 at 8).

Nordisk's pharmaceutical-grade semaglutide API in Novo Nordisk's FDA-approved semaglutide medicines. (*Id.* ¶ 16). The testing also revealed that Well Pharmacy's compounded semaglutide contains semaglutide-related impurities that are not found in Novo Nordisk's semaglutide API in Novo Nordisk's FDA-approved semaglutide medicines. (*Id.* ¶ 19).

### B. Procedural History

Novo Nordisk commenced this action on November 29, 2023, (Doc. 1), and Wells Pharmacy filed its answer on February 5, 2024. (Doc. 18). On July 29, 2024, Wells Pharmacy filed its Motion for Summary Judgment, (Doc. 31) and Novo Nordisk filed its Response on August 19, 2024. (Doc. 36). On September 3, 2024, Wells Pharmacy filed its Reply. (Doc. 40). On January 8, 2025, the case was transferred to the undersigned. (Doc. 44).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must satisfy this initial burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1277 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response, "a party opposing a properly

supported motion for summary judgment may not rest upon mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 256 (1986) (citation and internal quotation marks omitted).

The movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. In deciding whether to grant summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1164 (11th Cir. 2003) (citation omitted).

Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." (citation and internal quotation marks omitted)). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead [will] accept [the non-moving party's] version of the facts drawing all justifiable inferences in [the non-movant's] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Notwithstanding this inference, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes, through the record presented to the

court, that [she] is able to prove evidence sufficient for a jury to return a verdict in [her] favor." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996).

## III.    ANALYSIS

### A. Discovery

After the Motion for Summary Judgment was filed, and after Novo Nordisk responded, the parties filed a Joint Motion to Stay Discovery (Doc. 37). In the joint motion, the parties "agreed to stay discovery pending the resolution of Defendant's Motion for Summary Judgment' and represented that a temporary stay would be "[c]onsistent with Federal Rule of Civil Procedure 1" and would "avoid prejudice to either party," citing case law for the proposition that courts may, for good cause, issue an order to protect a party or person from undue burden or expense. (Doc. 37 at 3). The stay was granted by Judge Corrigan on September 3, 2024. (Doc. 39).

In its Response to the Motion for Summary Judgment, filed before the joint motion to stay, Novo Nordisk took the position that "many facts remain undiscovered that would allow both Novo [Nordisk] to respond properly to [the] Motion and the parties to understand the claims and defenses at issue in this case." (Doc. 36 at 8). Novo Nordisk argues that "Wells [Pharmacy] contends that 'the allegedly improper advertisement attached to Plaintiff's complaint as Exhibit A was withdrawn and replaced on May 2, 2023'—with Novo having had no opportunity to

discover whether the replacement contains the same unlawful language." *Id.* at 15.

It made a similar argument with respect to the ceased sale of the semaglutide drug:

> Simply put, Wells cannot properly ask this Court to agree it voluntarily ceased its egregiously unlawful behavior—selling "semaglutide" drugs that contain 33% impurities, and falsely advertising its drugs as FDA-approved—based on a self-serving declaration with no guarantee it will not continue that behavior absent an injunction, and with no opportunity to test that assertion through discovery.

(*Id.* at 16). Furthermore, in Novo Nordisk's response to Wells Pharmacy's Statement of Undisputed Facts, it repeatedly objects to multiple proposed undisputed facts on the grounds that "Wells Pharmacy has refused to provide discovery responsive to requests" which would allow Novo Nordisk to respond. (Doc. 36-1 at ¶¶ 2, 17, 18, 19, 21, 22, 24); (*see also id.* at ¶¶ 1, 15, 16, 20, 23).[4]

As noted above, a key difference in the parties' positions is whether this case only concerns Wells Pharmacy's efforts to compound, dispense and advertise semaglutide + BPC-157, or broader category of purportedly adulterated drugs. Hence, prior to the stay, Novo Nordisk objected to Wells Pharmacy refusal to provide discovery into its "semaglutide" drugs (other than "semaglutide + BPC-

---

[4] These contrary positions are perplexing. On the one hand, Novo Nordisk stipulated that discovery could be stayed and the motion for summary judgment could be adjudicated based on the record thus far, and on the other hand, it argues that it could not respond to the motion for summary judgment because discovery had not been completed. A more fulsome record may have been obtained, had Novo Nordisk filed a motion requesting further discovery pursuant to Fed. R. Civ. P. 56(d). It did not.

157"). (Doc. 36-5 ¶ 10). Consistent with its position, Wells Pharmacy agreed to produce (i) its  advertising of semaglutide + BPC-157, (ii) complaints Wells Pharmacy received regarding its semaglutide + BPC-157 preparations, (iii) documents identifying impurities in its semaglutide + BPC-157 preparations, (iv) documents sufficient to establish that it sold semaglutide + BPC-157 prior to the filing of the Complaint, and (v) documents sufficient to establish the date that Wells Pharmacy stopped compounding and dispensing semaglutide + BPC-157. (Doc. 38 at 9, Doc. 35-6).

A fair reading of the Complaint leads to the uncontrovertible conclusion that Novo Nordisk's Complaint challenges Wells Pharmacy's use, sale and advertisement of semaglutide + BPC-157 only. Throughout the Complaint, the challenged advertisement and adulterated drug is referred to as Wells Pharmacy's compounded "Semaglutide + BPC-157" (Doc. 1 at ¶ 19, 20, 24, 42, 44, 45), and thus, the Motion will be decided on that basis. A plaintiff cannot defeat a motion for summary judgment by raising new claims or a new theory of recovery. "It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 (11th Cir. 2012), abrogated on other grounds by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) and *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir.2006).

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Hurlbert*, 439 F.3d at 1297. Here, Novo Nordisk has not sought leave to amend, and it certainly was on notice of Wells Pharmacy's correct interpretation of the Complaint when the parties were engaged in their discovery disputes. (Doc. 35 and attachments thereto); (Doc. 38).

## B. Article III

Wells Pharmacy's central argument is that the Court lacks Article III authority to decide the present lawsuit. The Court agrees. Under the Declaratory Judgment Act, in a "case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1251 (11th Cir. 2019) (explaining that the Declaratory Judgment Act doesn't "enlarge the jurisdiction of the federal courts" and that declaratory relief is subject to the "case or controversy" requirement of Article III). "Before a federal court may issue relief under the Act, there still must be a case or controversy that is live, is definite and concrete, and is susceptible to specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 734 (11th Cir. 2018) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

Even if there is an actual controversy when a case is filed, the mootness doctrine ensures that a justiciable case or controversy is present at all stages of review. *Gagliardi*, 889 F.3d at 733. "Thus, a case becomes moot when the reviewing court can no longer offer any effective relief to the claimant." *Id.* "As with any federal suit, when a party seeks declaratory relief, the courts are required to examine whether there is an 'actual controversy,' without which a declaration may not issue." *Id.* at 735.

The Court in *Cambridge Christian* recently explained:

> A plaintiff seeking injunctive relief to prevent future injury must establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury is certainly impending. . . . Allegations of "possible future injury" are not sufficient for Article III standing. . . . Likewise, a plaintiff has standing to seek declaratory relief only when there is a substantial likelihood that he will suffer injury in the future. The controversy between the parties cannot be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

115 F.4th at 1281 (internal citations and quotations omitted).

When faced with a motion for summary judgment, if the non-moving party "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e); (Doc.

40 at 4). Thus, the Court accepts as undisputed those facts properly supported by evidentiary materials and examines whether Novo Nordisk has met its burden of demonstrating an absence of any genuine issue of material fact such that it suffers a concrete particularized injury. Wells Pharmacy has presented uncontroverted evidence that it ceased compounding and advertising the only drug mentioned in the Complaint. (Doc. 31-2 at ¶¶ 7-8, 11); (Doc. 32-1). The court concludes that there is no actual controversy between the parties here, and the claims are moot. Nor is injunctive relief appropriate as there is no evidence that the purported wrongful behavior will likely occur or continue. Wells Pharmacy has shown it will not resume compounding with BPC-157 unless the FDA changes its position on the safety and efficacy of BPC-157. (Doc. 31-2 ¶ 15).

Accordingly, the motion for summary judgment is granted and all claims are dismissed for lack of Article III jurisdiction. *Gagliardi*, 889 F.3d at 735.

### C. Count III: Preemption

Wells Pharmacy has not sought dismissal of Count III on the grounds of preemption. However, it raised preemption when it objected to any discovery sought solely for the purpose of enforcing the FDCA, arguing that the FDCA prohibits private enforcement, citing cases wherein courts repeatedly granted motions to dismiss where drug manufacturers attempted to enforce the FDCA under the guise FDUTPA or the Florida DCA claim. (Doc. 38 at 15). Indeed, numerous similar FDUTPA lawsuits have been dismissed on preemption grounds, and preemption

would likely apply here. Order, *Novo Nordisk v. WELLHealth Inc.*, No. 3:23-cv-00782-ACC-LLL (M.D. Fla. Jan. 30, 2025), ECF No. 63; Order, *Novo Nordisk, Inc, v. Live Well Drugstore, LLC*, No 3: 23-cv- 00808-ACC-PDB (M.D. Fla. Jan. 30, 2025), ECF No. 85; *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, No. 8:23-CV-1503-WFJ-TGW, 2023 WL 7385819, at *3 (M.D. Fla. Nov. 8, 2023); *Eli Lilly & Co. v. Wells Pharmacy Network, LLC*, No. 5:23-CV-576-JSM-PRL, 2024 WL 1641673, at *3 (M.D. Fla. Feb. 5, 2024); *Eli Lilly & Co. v. RXCompoundStore.com, LLC*, No. 23-CV-23586, 2024 WL 1554339, at *6 (S.D. Fla. Apr. 9, 2024).

## IV.    CONCLUSION

Based on the foregoing, it is ordered as follows:

1.   Defendant Motion for Summary Judgment (Doc. 31) is **GRANTED**.

2.   All other pending motions are **DENIED as moot**.

3.   The Clerk is **DIRECTED** to enter judgment that Plaintiff Novo Nordisk, Inc. take nothing on its claims and Defendant Wells Pharmacy Network, LLC is entitled to costs.

4.   The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 12, 2025.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties